The STATE of Ohio, Appellee,

v.

BAKIES, Appellant.

[Cite as *State v. Bakies* (1991), 71 Ohio App.3d 810.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58988.

Decided April 8, 1991.

*Stephanie Tubbs Jones,* Prosecuting Attorney, and Scott Salisbury, Assistant Prosecuting Attorney, for appellee.

*Donald Modica,* for appellant.

ANN DYKE, Judge.

On September 28, 1989, defendant-appellant, Edward Bakies, was indicted for grand theft (R.C. 2913.02[A][2]) and possession of criminal tools (R.C.

2923.24). On November 21, 1989, after a trial to the jury, appellant was found guilty of grand theft and possession of criminal tools. Appellant timely appealed and assigns two errors for our review.

The state called one witness, Ursula Schwydkiw. Schwydkiw testified that she met appellant in January or February 1986 and that a relationship between them developed. During the course of their relationship, appellant made a trip to Las Vegas and upon his return told Schwydkiw of a ranch in Harrison, Arkansas, owned by a Juanita Robinson. Robinson and her two sons produced bronze statues. Schwydkiw testified that appellant in June 1986 told her that he needed $10,000 to help the Robinsons finance a $150,000 debt that existed on their ranch. If appellant was successful in helping them to salvage their ranch, he was to receive the statues which he could then sell for profit.

Schwydkiw testified she initially refused to loan him the money, but eventually agreed. Schwydkiw stated that appellant promised her he would return the $10,000, plus an additional $5,000, in two to three weeks. Schwydkiw insisted that a promissory note be drawn. Appellant's attorney prepared the note and appellant signed it. On June 15, 1986, appellant delivered the note and Schwydkiw transferred to appellant the sum of $10,000.

Approximately one week later, Schwydkiw went to appellant's home and, despite the provisions in the note, demanded collateral for her money. Appellant acquiesced and gave her a "script" which Schwydkiw believed to have value in the amount of $80,000.

The record shows that the refinancing of the ranch did not go through and appellant did not make any payment on the note. Schwydkiw repeatedly demanded her money and eventually received a civil judgment against appellant in the amount of $18,000. Collection efforts at the time of trial had been unsuccessful. Schwydkiw eventually brought her case to the police and the present criminal convictions resulted.

I

"The evidence at trial was not legally sufficient to support appellant's conviction of aggravated theft under Section 2913.02, Ohio Revised Code."

Appellant argues that the trial court erred in not acquitting appellant at the conclusion of the trial since the state failed to prove all the elements of the crime charged beyond a reasonable doubt.

Crim.R. 29(A) provides that a trial court, upon motion by the defendant after the evidence on either side is closed, shall order the entry of a judgment of acquittal of the charged offense if the evidence is insufficient to sustain a

conviction for the offense. The state is required to prove all elements of the crime beyond a reasonable doubt, including those elements relating to the body or the substance of the crime and the act and criminal agency of the act. *State v. Scott* (1983), 8 Ohio App.3d 1, 8 OBR 1, 455 N.E.2d 1363.

R.C. 2913.02 provides in relevant part:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

" * * *

"(3) By deception."

R.C. 2913.01(A) defines "deception" as:

" * * * knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission which creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

■ The issue before this court is whether the state's evidence was sufficient to establish beyond a reasonable doubt that appellant was guilty of grand theft by deception. Where the evidence offered by the state in support of the elements of the charged offense is so insufficient, and of such slight probative value, that it is not proper to make a finding beyond a reasonable doubt that appellant committed all of the acts constituting the offense, a reviewing court must reverse the conviction.

In *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, the court held that the trial court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

■ In this case, the evidence does not support a finding that appellant knowingly deprived Schwydkiw of her money by deceiving her. After a careful review of the transcript, we find that the state presented no evidence that *at the time the loan was made* appellant did not have a good faith intent to repay Schwydkiw.

The record shows that appellant, in June 1986, told Schwydkiw that he needed $10,000 to finance a deal in Arkansas. Appellant told Schwydkiw that the $10,000 would be used to assist a Juanita Robinson. Juanita Robinson owned a ranch in Arkansas in which she and her two sons produced bronze

statues. Appellant told Schwydkiw that in exchange for helping the Robinson's refinance their ranch, he would receive the bronze statues which he in turn could sell for a profit.

Schwydkiw initially refused appellant's request but later agreed to the transaction so long as appellant had a promissory note drawn. Appellant's attorney drafted the promissory note and appellant executed the note and then delivered the note to Schwydkiw. The note stated that ten thousand dollars was to be paid upon completion of refinancing of a certain parcel of land and buildings located in Harrison, Arkansas, or the refinancing of a certain thirty-five-foot National Motor Coach, vehicle and engine identification number 83364. The note further provided that "all sums totaling Fifteen Thousand Dollars ($15,000.00) shall be paid on or before six (6) months from the date of this Agreement."

Schwydkiw testified at trial and stated that she read and understood the note's terms, but insisted that despite the note's terms appellant, at the time the loan was made, promised to pay her back in two to three weeks and that she had not received, from appellant, at the date of trial, any portion of the loan. Schwydkiw further stated that "right after" appellant got the money, "he paid out of that money Joe Youngworth, his attorney, $3,301 he owed him." Schwydkiw also stated that appellant bought shirts, shoes, a belt, that he went to the rib cook off. Schwydkiw stated, that "this man didn't have any money." Schwydkiw testified that, "he spent $10,000 on himself. It never went to Arkansas. Never one penny went to Arkansas."

It was the state's obligation in this instance to produce evidence which showed that appellant "with purpose to deprive the owner of property, * * * knowingly *obtained* or exert[ed] *control* over * * * the property * * * by deception. [Emphasis added.]" The state had to show that appellant *at the time he borrowed the money* from Schwydkiw never intended to pay it back. The issue is not, as the state claims, whether appellant deceived the victim by telling her the money would be paid back two to three weeks later; rather, the issue is whether the state showed that, at the time appellant borrowed the money he never intended to pay it back.[1] To show that appellant at the time he borrowed the funds never intended to pay them back, the state had to produce some evidence which showed that the deal in Arkansas never existed or that appellant, at the time of the loan, never intended to use the $10,000 towards the deal.

---

1. If the issue were as the state claims, anyone who has ever promised repayment and subsequently defaulted on a loan could be charged with theft by deception. The circumstances and representations as to how the funds were *obtained* is what will be determined criminal or not under R.C. 2913.02.

The record in this case contains no evidence to show that the deal in Arkansas did not exist. In fact Schwydkiw's testimony indicates that the deal did exist and was not a scam. Schwydkiw testified that appellant at the time he told her about the deal had taken a trip out west and showed her a bronze statue that he claimed the Robinson's had produced. Schwydkiw also stated that appellant made several calls from her home to Mrs. Robinson and travelled at some point to Arkansas to discuss matters with a bank. No evidence was presented that appellant deceived Schwydkiw by misrepresenting to her the deal. No evidence exists in the record that appellant's attempt to assist the Robinsons to refinance their property was insincere or non-existent.

Secondly, there does not exist sufficient evidence to show that appellant never intended to use the $10,000 towards the deal. Schwydkiw stated that appellant shortly after receiving the loan spent money on attorney fees and clothing. Schwydkiw testified that she believed he spent the $10,000 on himself and that it never went to Arkansas. The record, however, is devoid of any showing that Schwydkiw knew that the money *she* lent appellant went towards these expenses or that the attorney fees were not in some way related to the financing venture. Schwydkiw further claimed that appellant had no money. The implication we assume is that any money appellant spent on himself had to come from the $10,000 and thus if a portion of those funds were spent, it evidenced that appellant never intended to use the funds for the Arkansas deal. The record, however, is devoid of any concrete indication as to what period of time elapsed between the loan and these expenditures. It is conceivable that at the time appellant made these expenditures, his reason for borrowing the funds no longer existed, *i.e.*, the deal may have fallen through in Arkansas and appellant was left with $10,000.[2] Schwydkiw's testimony still does not establish that appellant, *at the time he borrowed the funds*, did not intend to repay her.

Keeping in mind the standard of review for a claim that the trial court erred in denying a motion for acquittal, we find that the state did not present sufficient evidence in support of the elements of the charged offense. The state's sole witness presented evidence of such slight probative value on the elements of the offense that we are obligated to reverse appellant's conviction.

The assignment of error is well taken. Appellant's conviction is reversed.

---

2. The honorable thing to do would have been to return the funds. However, Schwydkiw's relief, like any other creditor, was to secure a civil judgment against appellant, which she in fact accomplished.

It appears that the present case simply presents a loan and a failure to repay the loan.

## II

"The jury's verdict of guilty on the charge of possessing criminal tools in violation of Section 2923.24, Ohio Revised Code, was against the manifest weight of the evidence."

 Appellant was indicted for possessing criminal tools (R.C. 2923.24).[3] The item identified as the criminal tool was a "script." The "script," identified as a state's exhibit, can best be described as a certificate of credit or coupon for a negotiable credit at a cafe in Nigal, Jamaica. Approximately one week after the loan was consummated, Schwydkiw went to appellant's home demanding collateral or security. Appellant gave the script to Schwydkiw as collateral.

Apparently, the state's theory of guilt was that the script was somehow used in obtaining the loan and therefore intent to use the script criminally was used when the theft was proved. The state's case fails for several reasons. Firstly, we have determined that the state failed to produce sufficient evidence to show a theft occurred, thus, intent to use the script criminally has not been shown. Secondly, the record shows that the loan was consummated well before Schwydkiw requested collateral and was given the script. Assuming *arguendo* that the loan amounted to theft, the script and the "theft" were unconnected. Lastly, there was no evidence that appellant was in possession of the script for any purpose connected with the money borrowed from Schwydkiw or that he had possession of the script with purpose to use it in connection with some other crime.

The state has failed to show by sufficient evidence that appellant possessed a "criminal tool" as defined in R.C. 2923.24. Appellant's conviction is reversed.

*Judgment reversed.*

JOHN F. CORRIGAN and BLACKMON, JJ., concur.

---

3. R.C. 2923.24 provides in relevant part:

"(A) No person shall possess or have under his control any substance, device, instrument, or article, with purpose to use it criminally.

"(B) Each of the following constitutes prima-facie evidence of criminal purpose:
" * * *

"(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating such item is intended for criminal use."