JOURNAL ENTRY AND OPINION
{¶ 1} Defendant John Capone appeals from his conviction for theft. For the reasons set forth below, we affirm.
 {¶ 2} On March 10, 2004, defendant was indicted for one count of theft in violation of R.C. 2913.02 in connection with an uncompleted basement finishing contract. Defendant pled not guilty and the matter proceeded to a jury trial on February 17, 2005.
 {¶ 3} Linda Berkopec-Pesek testified that defendant approached her regarding landscaping at her Broadview Heights home. According to the witness, defendant indicated that he would use the job as a model home which would generate additional business for him and he offered a package which would include a sprinkler system, landscaping with over one hundred shrubs, trees and plants with mulched beds, one small retaining wall and two higher retaining walls, topsoil and a lawn, small pond and a waterfall. The cost was $8,500. Berkopec-Pesek gave defendant $5,000 and agreed to give him the balance when the job was completed.
 {¶ 4} The witness testified that she eventually paid defendant in full but he did not complete the project. She later added additional items to the project, including a deck and hot tub. Berkopec-Pesek paid separately for these items, however, and she produced checks or receipts that clearly identified the work performed and the payment given. By August 22, 2003, she agreed to pay him $2,300 * * * when all work is completed for landscaping." A receipt from defendant dated October 13, 2003 indicates that the indicates that the "landscaping has been completed and paid in full."
 {¶ 5} In July 2003, they spoke about finishing the interior of Berkopec-Pesek's basement. This project was to include interior living areas including a kitchen and bathroom, and exterior work for a walk-out area. The agreement outlined that the price of the interior work was $45,000 and the price of the exterior walk-out area was $15,000. Defendant agreed that "[c]ost is to include labor and any other contractors needed and for equipment and tool rental." He also outlined all of the materials, appliances and fixtures included within the total cost.
 {¶ 6} Defendant informed her that he would begin the basement work when the landscaping project was finished. He requested payments immediately, however, so that he could purchase the basement materials and fixtures.
 {¶ 7} Defendant later told Berkopec-Pesek that he had purchased materials for the basement and he continued to ask for additional money. By September 24, 2003, Berkopec-Pesek paid defendant a total of $40,000.
 {¶ 8} In September 2003, defendant stopped working on the landscaping project, and various items were still unfinished. Berkopec-Pesek spotted defendant working on other landscaping jobs in the neighborhood. Defendant complained that he had not been paid on the other jobs and asked Berkopec-Pesek for more money pursuant pursuant to the basement contract but she refused.
 {¶ 9} Berkopec-Pesek subsequently complained to defendant's wife, Rita. On October 3, 2003, defendant's Rita Capone told Berkopec-Pesek that she would provide the materials for the basement and the two then went to 84 Lumber. Rita Capone signed for $4,600 in materials at this time. In addition, on October 17, 2003, Berkopec-Pesek spent an additional $5,000 on the basement project.
 {¶ 10} A short time later, however, Berkopec-Pesek learned that 84 Lumber had placed a lien on her home in connection with the purchase made by defendant's wife. Finally, Berkopec-Pesek testified that none of the work was performed on the basement contract.
 {¶ 11} On cross-examination, Berkopec-Pesek acknowledged that she paid defendant from an account that she shares with her mother.
 {¶ 12} She also acknowledged that she had requested additional items in connection with the landscaping project, but she reiterated that her receipt indicates that the landscaping had been paid in full.
 {¶ 13} Berkopec-Pesek admitted that defendant told her that he would begin the project after the weather cooled, but he told her that he had all of the materials. When Berkopec-Pesek spoke to defendant's wife in September 2003, she likewise assured her that defendant had all of the materials for the contract and that the work would be done. Following the 84 Lumber purchase, BerkopecP-esek and defendant's wife went to Home Depot and purchased additional items, again charged to Berkopec-Pesek against the total contract price. Defendant's wife also arranged for framers to work in the basement and Berkopec-Pesek paid them directly for this work. Berkopec-Pesek finally fired defendant after learning of the lien from 84 Lumber.
 {¶ 14} Det. Donald Polick of the Broadview Heights Police Department testified that he investigated the matter and spoke with defendant. Defendant told Det. Polick that he was 50% done with the basement project but could not explain the work he performed and could not identify materials purchased.
 {¶ 15} Det. Polick admitted, however, that he had not been to Berkopec-Pesek's home in connection with the investigation.
 {¶ 16} Defendant presented the testimony of Tom Gerspacher, Frank Stolerski and Rita Capone.
 {¶ 17} Tom Gerspacher testified that he worked on a deck at Berkopec-Pesek's home. He stated that defendant provided all of the materials for the project and paid him for his labor. He also stated that Berkopec-Pesek added other items to the landscaping project.
 {¶ 18} Frank Stolerski testified that he worked as a landscaper for defendant and worked at Berkopec-Pesek's house. According to Stolerski, defendant paid him $11 per hour.
 {¶ 19} Stolerski next testified that the landscaping project was extensive and involved various items including a deck, irrigation system, walkways, and a pond.
 {¶ 20} On cross-examination, Stolerski acknowledged that defendant's time sheets show "Frank" working various part-time hours. He also admitted that he did no work on the basement project.
 {¶ 21} Rita Capone testified that defendant worked on the landscaping project for months. In September 2003, defendant was sentenced to six months incarceration in Lorain County. Rita endeavored to have her husband's projects completed and, she claimed, she had Berkopec-Pesek's landscaping job finished.
 {¶ 22} By October 2003, she hired two men to clear out BerkopecP-esek's basement so that the basement project could commence. She then hired plumbers, framers and electricians and went with Berkopec-Pesek to pick out fixtures. She claimed that she "tried to keep [the costs] within the next $5,000 draw" on the contract. Berkopec-Pesek did not advance the "draw" to her, however, and paid the workers directly. After 84 Lumber obtained a lien on the property, Berkopec-Pesek fired her and continued to work with the various subcontractors directly.
 {¶ 23} On cross-examination, Rita Capone claimed that the money which defendant received for the basement project was put into completion of the landscaping project. She did not know if he ever purchased any materials for the basemen project. Her husband performed no work on this project. She admitted that she had no contracts with the subcontractors and that Berkopec-Pesek paid them directly. Finally, she admitted that she told Berkopec-Pesek that she still owed another $20,000-$25,000 on the basement project.
 {¶ 24} Defendant was subsequently convicted of theft and sentenced to two years of community control sanctions. Defendant now appeals and assigns one error for our review.
 {¶ 25} Defendant asserts that his conviction is unsupported by sufficient evidence and against the manifest weight of the evidence. Within his assignment of error, defendant asserts that the state's evidence did not establish that it was his intent to not perform the work at the time he entered into the contracts.
 1. Sufficiency of the Evidence {¶ 26} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 27} R.C. 2913.02(A)(3) states "no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * by deception." R.C. 2913.01(A) defines "deception" as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 28} The term "deprive" in the statute means to do any of the following: withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration; dispose of property so as to make it unlikely that the owner will recover it; accept, use, or appropriate money, property, or services, with purpose not to give proper consideration consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration. R.C.2913.01(C)(1)-(3).
 {¶ 29} A person acts "purposely" when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature. R.C. 2901.22(A). The term "knowingly," as used in the requirement of "knowingly obtain or exert control," means that a person, regardless of purpose, is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. R.C. 2901.22(B).
 {¶ 30} The elements of theft by deception, a violation of R.C. 2913.02(A)(3) and a felony of the second degree are as follows:
 {¶ 31} "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * By deception[.]"
 {¶ 32} Because intent lies within the privacy of a person's own thoughts and is therefore not susceptible to objective proof, intent is determined from the surrounding facts and circumstances, and persons are presumed to have intended the natural, reasonable and and probable consequences of their voluntary acts. State v. Garner, 74 Ohio St.3d 49, 60,1995-Ohio-168, 656 N.E.2d 623.
 {¶ 33} R.C. 2913.01(A) defines deception as "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 34} In this matter, the state was required to demonstrate that at the time the defendant took the money, he had no intent to repay the money or perform under the contracts in exchange.State v. Smith, Butler App. No. CA2004-11-275, 2005-Ohio-551, citing State v. Bakies (1991), 71 Ohio App.3d 810, 813,595 N.E.2d 449 and State v. Coleman, Champaign App. No. 2002 CA 17,2003-Ohio-5724.
 {¶ 35} In this case, our review of the record indicates that there was ample proof of the defendant's intent to deprive BerkopecP-esek of her money by deception. Defendant promised to perform the work and indicated that the total cost would include labor and materials. He falsely told Berkopec-Pesek that he had purchased materials for the project and repeatedly asked for more money to continue such purchases. Defendant in fact purchased nothing for the project and did no work on the project. After Berkopec-Pesek confronted defendant's wife, Rita Capone arranged for materials to for materials to be sent to the home and for workers to begin, but Berkopec-Pesek paid separately for the workers and the materials. Det. Donald Polick testified that after being read his rights defendant was very evasive and could not explain what he had done with the money.
 {¶ 36} From the foregoing, defendant was properly convicted of theft by matter, the trial court properly determined that defendant was guilty of theft by deception. There was sufficient evidence in the record for the trial court to find that defendant made misleading representations to induce the homeowner to pay him substantial funds and continue to advance him additional money while defendant had no intent to fulfill the promises, and intended to deprive her of her property. See State v.Edmondson, 92 Ohio St.3d 393, 398, 2001-Ohio-210,750 N.E.2d 587; State v. Wright, Erie App. No. E-03-054, 2004-Ohio-5228; Based upon the surrounding facts and circumstances and the natural and reasonable consequences of his actions, the state sufficiently demonstrated that defendant intended to deceive Berkopec-Pesek at the time he took money from her.
 2. Manifest Weight {¶ 37} In State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 38} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 {¶ 39} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
 {¶ 40} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 41} In this matter, the trial court did not lose its way in convicting defendant of theft by deception. The evidence demonstrated that defendant entered into a landscaping agreement with Berkopec-Pesek, and that this agreement was "paid in full." She also entered into a contract for the finishing of her basement and, at defendant's repeated requests, eventually advanced him $40,000 for this work. Defendant performed no work on the agreement and soon stopped responding to Berkopec-Pesek's telephone calls. She then went to defendant's home and spoke to his wife, Rita. As a result of this meeting, Rita and Berkopec-Pesek then went to 84 Lumber to purchase materials for the project, but 84 Lumber obtained a lien against Berkopec-Pesek's home following this purchase. Defendant's evidence did not undermine any evidence presented by the state. Although defendant offered evidence to suggest that the money advanced on the basement contract was consumed by additional work that Berkopec-Pesek requested on the landscaping agreement, it is beyond dispute that the landscaping agreement was "paid in full" and all receipts carefully delineate the project to which they belong. In addition, defendant repeatedly told Berkopec-Pesek that he needed money pursuant to the basement contract because he was purchasing materials for this job. In fact, he purchased nothing In fact, he purchased nothing for this job and did not hire any workers. The conviction is not against the manifest weight of the evidence.
 {¶ 42} The assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, J., concurs.
 Calabrese, Jr., J., dissents. (See Attached DissentingOpinion)
 DISSENTING OPINION