JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Charles Waiters, Jr., appeals his conviction of theft by deception in the Cuyahoga County Court of Common Pleas. For the reasons stated herein, we vacate the judgment of the trial court.
 {¶ 2} Waiters was indicted on one count of theft by deception, in violation of R.C. 2913.02(A)(3), a felony of the fifth degree. He entered a plea of not guilty, and the matter proceeded to a bench trial.
 {¶ 3} The testimony at trial established that Waiters agreed to do some kitchen and bathroom remodeling work at the victim's home. Waiters went to the victim's home, looked it over, wrote up a contract to perform the work for $2,000, and accepted a $1,000 check from the victim as a down payment. Waiters then cashed the check.
 {¶ 4} The testimony of the victim differs from that of Waiters as to what happened next. The victim testified that within the same week, Waiters returned to the victim's home with three other workers. Waiters did not start work at that time. The victim indicated that it was her understanding that Waiters needed to get some materials and was going to come back to start the work. At that time, the only tool that Waiters brought into the house was a level, which he placed on the counter.
 {¶ 5} The victim testified that Waiters asked her for more money for the countertop. Having already paid a $1,000 down payment, and with no work having been performed, the victim told Waiters she would not give him more money, and *Page 4 
Waiters then left. The victim stated she called Waiters, who stated he was not going back to the house that day.
 {¶ 6} The victim testified that she did not hear from Waiters over the next few days and that her efforts to reach him were unsuccessful. After a week, she finally reached Waiters. She told him that she had several other contractors looking at the house, but that there was plenty of work to be done on her home. The victim does not dispute that there was some discussion about Waiters performing work in other areas of her home. According to the victim's testimony, Waiters never returned to the home, never delivered any materials to the home, never started the work, and never gave the victim her money back. The victim testified that she eventually hired another contractor to perform the work on her home.
 {¶ 7} Waiters testified that after accepting the down payment, he returned to the victim's home and performed measurements for the countertop, and later he began pricing countertops. He stated that a few days later he went to Home Depot and bought some materials and returned to the victim's home. A receipt for materials with the victim's name written on it was presented at trial.
 {¶ 8} Waiters testified that he brought materials into the victim's home and began doing some "prep work" in the bathroom. He stated that the victim then told Waiters that she had changed her mind, that she was going to have her uncle do the kitchen and bathroom work, and that she wanted Waiters to redo the doors and resurface the walls, which was not the work under the contract. After estimating that it was going to cost more money, Waiters informed the victim he would require an *Page 5 
additional $500 deposit. Waiters testified that the victim refused and, within a couple days, called and asked for her money back. Waiters claimed that because he had purchased materials and started to perform the job under contract, he did not return the money.
 {¶ 9} Testimony was also presented from Cleveland L. Blade, who worked with Waiters. Blade testified that he and Waiters went to Home Depot and then to the victim's home. Blade stated that he brought in some boxes and materials and that Waiters began to perform work in the bathroom. Blade further testified that the victim entered the bathroom, that the work being performed was stopped, and that there was a discussion about additional work.
 {¶ 10} The trial court was perplexed that Waiters did not return the money when he had presented a receipt reflecting that only $17.98 had been spent on materials, which excluded a power saw that the court did not consider a supply. The trial court found that "there's no reason why under these circumstances [Waiters] didn't simply return the money if he wasn't going to do the work." The court further found that Waiters's testimony was inconsistent and was not credible on the issue. The court found the victim's testimony to be credible and proceeded to find Waiters guilty as charged. Waiters was sentenced to community control sanctions with an order of restitution in the amount of $1,000.
 {¶ 11} Waiters timely appealed the judgment of the trial court. He raises two assignments of error for our review, which provide as follows: *Page 6 
 {¶ 12} "I. Appellant's theft conviction is not supported by sufficient evidence as required by the Due Process Clauses of the United States and Ohio Constitutions.
 {¶ 13} "II. Appellant's theft conviction is against the manifest weight of the evidence."
 {¶ 14} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 15} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard, 104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 16} In this case, Waiters was charged with theft by deception in violation of R.C. 2913.02(A)(3). The statute provides as follows: "No person with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (3) By deception." *Page 7 
 {¶ 17} "When proving a violation of R.C. 2913.02(A)(3), the State must demonstrate that at the time the defendant took the money he had no intent to repay the money or perform under the contract in exchange."State v. Coleman, Champaign App. No. 2002 CA 17, 2003-Ohio-5724, citingState v. Bakies (1991), 71 Ohio App.3d 810. Waiters argues that the state failed to prove that he had no intent to perform under the contract at the time he accepted the victim's down payment. He further states that this is a breach of contract case, not a criminal case.
 {¶ 18} Upon our review, we find that the record fails to demonstrate the requisite criminal intent in this matter. The victim testified that after receiving the down payment, Waiters returned to her home with other workers. Although she claimed that no work was performed at that time, she acknowledged her understanding that Waiters needed to get some materials. The evidence reflected that the countertop was an item to be replaced and that this item needed to be priced. Waiters presented a receipt for materials he purchased and offered corroborating testimony from one of his workers indicating that the victim had changed plans with regard to the work to be performed. The victim conceded that she had other contractors looking at the home and that there was some discussion about Waiters performing work in other areas of her home.
 {¶ 19} Waiters does not dispute that the victim's down payment was not returned. However, even accepting the victim's version of events that Waiters did not perform any work on her home and that after some discussions concerning the amount of down payment and work to be performed, she did not hear from him *Page 8 
again, the evidence is insufficient to establish that Waiters had no intent to perform under the contract at the time he accepted the victim's down payment.
 {¶ 20} This is not a case in which the defendant accepted the victim's money and was never heard from again. See State v. Belt, Union App. No. 14-03-36, 2004-Ohio-1511. Rather, in this case Waiters returned to the victim's home, and he had further discussions with the victim regarding the work to be performed. It was evidenced that discussions were had concerning altering the work that had been agreed upon under the contract. We recognize the trial court found Waiters's version of events to be less than credible. Nevertheless, this alone, considering the record as a whole, does not establish a sufficient legal basis for establishing theft by deception. Waiters may well have handled this dispute in a more accommodating manner; likewise, this fact does not render his conduct, under these facts, criminal. "Simply put, this is a contract, not a criminal case. The civil law provides adequate remedies for breached contracts, and it appears that the complaining witness [may avail herself] of the civil courts to obtain full restitution."Orange Village v. Woolfolk (Oct. 5, 2000), Cuyahoga App. No. 77451.
 {¶ 21} Because the state failed to show defendant acted with the necessary intent to commit a crime, under either a sufficiency or manifest weight standard, we sustain the assigned errors and vacate the conviction.
Judgment vacated.
Judgment of the common pleas court is vacated and appellant is ordered discharged. *Page 9 
It is ordered that appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and JAMES J. SWEENEY, J., CONCUR *Page 1