[Cite as *State v. Vertucci*, 2017-Ohio-2838.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO

    Appellee

v.

ALLAN VERTUCCI

    Appellant

C.A. No. 28205

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. CR 2015 07 2165

DECISION AND JOURNAL ENTRY

Dated: May 17, 2017

TEODOSIO, Judge.

{¶1} On January 29, 2016, a jury found the Appellant, Allan Vertucci, guilty of the offense of theft from a person in a protected class. Mr. Vertucci appeals the order of the Summit County Court of Common Pleas convicting him of the offense, sentencing him to a term of three years, and ordering restitution. We affirm.

I.

{¶2} This case arises out of a business relationship whereby Mr. Vertucci, a building contractor, worked on a series of projects at the victims' residence for a period of just over two years. In June 2012, the victims hired Mr. Vertucci to repair their roof. Over the period of the next two years, through July 2014, the victims paid Mr. Vertucci approximately $80,000.00 for a series of projects, plus additional funds of approximately $7,000.00 that went towards materials. Despite being at the residence six days a week during this period, most of these projects languished in a state of disrepair, with the residence being described by the Summit County chief

building official as a site of deconstruction, rather than a construction site. The official noted: "It actually look[ed] like someone was trying to demolish the home rather than put something together."

{¶3} The chief building official further testified that projects were left uncompleted and not done in a workmanlike manner, and gave numerous examples. New windows were paid for by the victims, but never ordered or installed by Mr. Vertucci, despite the fact that he had removed the trim from the windows. An energized circuit was left exposed, wiring was left exposed, and an energized post switch was left hanging out, all of which were shock hazards. A surface light fixture over the shower was not completed. Kitchen and bath tile projects were incomplete and not installed in a workmanlike manner. A bathtub was removed, never to be replaced. The hall bathroom had been stripped and gutted, with the fixtures and plumbing removed. Bedroom and bathroom doors were removed and never replaced. Carpet was missing.

{¶4} There had been attempts at patching numerous areas of water damage throughout the house, but it was not done in a workmanlike manner. Insulated foam board was left exposed in the basement, creating a fire hazard. A sump pump crock was left uncovered, and plumbing was left unfinished. The septic system was not completed and was not operational. Electrical wiring outside of the house was left exposed above the grade. The front yard was dug up and never filled, with water pooling for lack of drainage. A pipe carrying water to the street was incorrectly installed above grade, such that it could freeze. Foundation repairs were started but not completed, and grading was not properly done, and as a result, drainage was directed at the basement of the residence which caused the basement to flood. There was also testimony, however, that Mr. Vertucci did finish certain projects: the roof was repaired, a cabinet was constructed under a stairway, and certain projects in the foyer and kitchen were completed.

{¶5}    After complaints about the residence had been reported, the police conducted an investigation, and Mr. Vertucci was eventually charged with the offense of theft from a person in a protected class.  After a jury trial, Mr. Vertucci was found guilty, sentenced to a prison term of three years, and ordered to pay restitution in the amount of $87,617.50.  Mr. Vertucci now appeals, raising three assignments of error.

II.

ASSIGNMENT OF ERROR ONE

THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION OF THEFT BY DECEPTION IN VIOLATION OF R.C. 2913.02(A)(3), DENYING TO DEFENDANT HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES.

{¶6}    In his first assignment of error, Mr. Vertucci argues that there was insufficient evidence to support the trial court's denial of his Crim.R. 29 motion for acquittal and to support the jury's verdict of guilty.  We disagree.

{¶7}    Whether the evidence in a case is legally sufficient to sustain a conviction is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  "In essence, sufficiency is a test of adequacy."  *Id.*  This Court reviews questions of law under a de novo standard.  *State v. Trifari,* 9th Dist. Medina No. 08CA0043–M, 2009–Ohio–667, ¶ 12.

{¶8}    "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶9} The indictment set forth that Mr. Vertucci committed the crime of theft from a person in a protected class "in that he did, with purpose to deprive the owner, * * * an elderly person, of property or services, to wit: monies, knowingly obtain or exert control over either the property or services by deception * * * in violation of Section 2913.02(A)(3) of the Ohio Revised Code * * *." Mr. Vertucci argues that a contractor cannot be found guilty of theft by deception if he actually begins work on the project and asks us to apply the analysis used in *State v. Chait*, 9th Dist. Medina No. 12CA0011-M, 2012-Ohio-6104, and in *State v. Coleman*, 2d Dist. Champaign No. 2002 CA 17, 2003-Ohio-5724, to the facts of the present case.

{¶10} In *Chait*, we detailed that the property owners hired Mr. Chait to remodel their garage into a living space to house additional elderly residents. *Chait* at ¶ 10. Prior to the renovation, the garage consisted of "one room with drywall and insulation." *Id.* Further, it was "partially wired and had a bathroom area." *Id.* The owners wanted to convert the garage into "a living area, which would include two bedrooms with closets, a family room, a laundry room, and an extended bathroom including a wheelchair-accessible shower," and agreed to pay Mr. Chait $26,700.00 to complete the job in two to four weeks. *Id.* At the commencement of the project, the owners gave Mr. Chait checks totaling $24,030.00 and, later, an additional check in the amount of $1,600.00 for electrical wiring. *Id.* at ¶ 11. Although Mr. Chait cashed all of the checks, he failed to complete the job and the owners were dissatisfied with the quality of his work, describing it as "shoddy and of poor quality." *Id.* at ¶ 11-12. Mr. Chait was then convicted of theft pursuant to R.C. 2913.02(A)(2) and (A)(3). *Id.* at ¶ 6.

{¶11} In reversing Mr. Chait's convictions, we considered the "significant amount of work" done in the owners' garage, including, but not limited to: (1) framing, (2) drywall, (3) shower installation, (4) plumbing, (5) wiring, (6) window installation, and (7) leveling portions of the floor. *Id*. at ¶ 12. We reasoned that "[t]he fact that there was substantial evidence that Mr. Chait's workmanship was subpar, does not detract from the fact that labor and services were provided for the money that the [owners] supplied." *Id*. at ¶ 21. We concluded that "[t]he State failed to produce sufficient evidence that Mr. Chait had the purpose to deprive the [owners] of money or that, at the time he took the money, he had no intent to perform under the contract." *Id*.

{¶12} The facts in *Chait* are distinguishable from the present case in several significant aspects. The pertinent time span in *Chait* is just over two months, beginning approximately on September 2, 2009, when the owners wrote Mr. Chait two checks, and continuing through approximately November 5, 2009, which was the last date Mr. Chait was at the house. In the present case, Mr. Vertucci began working for the victims, a husband and wife, in approximately June of 2012 through at least July of 2014, a period of just over two years. The wife was called as a witness in this matter, but her husband passed away prior to trial. The wife testified that Mr. Vertucci worked at the residence six days a week. The State argues that Mr. Vertucci's scheme demanded that he do some work during that time span, because otherwise the victims would not have continued to write him checks.

{¶13} "[*Chait*] does not stand for the proposition * * * that if a contractor performs some work on a contract, he cannot be found guilty of theft by deception." *Piesciuk v. Kelly*, S.D.Ohio No. 1:14–cv–185, 2015 WL 1637425, *9 (Apr. 13, 2015). The mens rea of an intent to deprive of property, "like most mental elements of crime, can rarely be proved by direct

evidence: thieves who work by fraud and deception do not admit to their victims that they have no intention of fulfilling their contracts. The mens rea must be proved circumstantially * * *." *Id*.

{¶14} The time period and work habits in the present case go toward providing a different theory of the offense than that which appeared in *Chait*. There is no question that Mr. Vertucci started many projects, and completed some of them. However, there is no bright line rule that provides that the commencement of a project can negate the requisite intent to deprive, especially, as here, where the offense is alleged to have occurred over a period of two years. In the present case, the State's theory of the case presents the question of whether this was a scheme of intentionally defrauding the victims by starting projects for the purpose of acquiring additional money from the victims without any intent of finishing the majority of those projects.

{¶15} *Coleman* is also distinguishable from the present matter. In *Coleman*, the appellant contractor did not raise an assignment of error of insufficient evidence, but instead claimed the judgment was against the manifest weight of the evidence. *Coleman* at ¶ 22. When a conviction is challenged as being against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Although we conduct de novo review when considering a sufficiency of the evidence challenge, "we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C–120570, C–120751, 2013-Ohio-4775, ¶ 33. In the present case, we are not addressing

the manifest weight of the evidence, and thus the standard and the analysis in *Coleman* is not pertinent to our review. In addition, we note that *Coleman* is from the Second District Court of Appeals and is not binding authority on this Court.

{¶16} Viewing the evidence in a light most favorable to the State, and in the context of the State's theory of the case, there is sufficient evidence to support a finding that Mr. Vertucci committed the crime of theft from a person in a protected class. Based upon the testimony as recounted above, a rational trier of fact could reasonably have found, beyond a reasonable doubt, that Mr. Vertucci committed the offense. Mr. Vertucci's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE COURT DENIED APPELLANT HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES BY ITS FAILURE TO PROPERLY INSTRUCT THE JURY REGARDING THE ELEMENTS OF, AND HIS DEFENSE TO, THE CHARGE OF THEFT BY DECEPTION.

{¶17} In his second assignment of error, Mr. Vertucci argues that the court erred by refusing to give the two jury instructions he requested. We disagree.

{¶18} "This Court reviews a trial court's decision to give or not give jury instructions for an abuse of discretion under the particular facts and circumstances of the case." *State v. Calise*, 9th Dist. Summit No. 26027, 2012–Ohio–4797, ¶ 68. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, (1983).

{¶19} "'A defendant is entitled to have his instructions included in the charge to the jury only when they are a correct statement of the law, pertinent and not included in substance in the general charge.'" *State v. Frazier*, 9th Dist. Summit No. 25338, 2011–Ohio–3189, ¶ 17, quoting *State v. Theuring*, 46 Ohio App.3d 152, 154 (1st Dist.1988). "'A trial court's failure to give a

proposed jury instruction is only reversible error if the defendant demonstrates that the trial court abused its discretion, and that the defendant was prejudiced by the court's refusal to give the proposed instruction.'" *State v. Sanders*, 9th Dist. Summit No. 24654, 2009–Ohio–5537, ¶ 45, quoting *Azbell v. Newark Grp., Inc.*, 5th Dist. Fairfield No. 07 CA 00001, 2008–Ohio–2639, ¶ 52.

{¶20} Mr. Vertucci requested the following instruction from the trial court:

DEFENSE, Performance

The Defendant has asserted a defense of performance. In the event that the evidence established that proves more likely than not that the Defendant started or substantially performed as requested by the alleged victims in this matter. [sic]

If you find that by a preponderance of the evidence that the Defendant provided services or products in furtherance of the requested services of the alleged victims in this case, you shall find that the Defendant has proved a defense to the charge of theft by deception and find the Defendant NOT GUILTY.

If you find by a preponderance of the evidence that the Defendant has not in fact started or substantially performed as requested by the alleged victims in this matter, then you may disregard this defense but you must continue to deliberate whether or not the State has proved each and every element of its case beyond a reasonable doubt.

Mr. Vertucci again draws our attention to *Chait* and *Coleman* in support of his argument.

{¶21} As Mr. Vertucci notes in his brief to this Court, the first instruction consists of informing the jury "that it is a defense to the charge [of theft] [i]f they found that defendant had started or substantially performed as requested." This is not a correct statement of the law. As we noted above, "[*Chait*] does not stand for the proposition * * * that if a contractor performs some work on a contract, he cannot be found guilty of theft by deception." *Piesciuk v. Kelly*, S.D.Ohio No. 1:14–cv–185, 2015 WL 1637425, *9 (Apr. 13, 2015). In particular, given the facts and circumstances of this case, it would be inaccurate to instruct the jurors that simply by

commencing a project, Mr. Vertucci could avoid a conviction for theft. The trial court, therefore, did not abuse its discretion in refusing to give the instruction.

**{¶22}** Mr. Vertucci further requested that the trial court instruct the jurors: "The State must prove beyond a reasonable doubt that that [sic] at the time the defendant took the money he had no intent to repay the money or perform under the contract in exchange." In making this request, Mr. Vertucci relied upon cases from the Second and the Eighth Districts. *Coleman* provides as follows: "When proving a violation of R.C. 2913.02(A)(3), the State must demonstrate that at the time the defendant took the money he had no intent to repay the money or perform under the contract in exchange. *State v. Bakies* (1991), 71 Ohio App.3d 810, 595 N.E.2d 449." *Coleman* at ¶ 29. *Bakies* held: "A conviction for grand theft by deception is not supported by sufficient evidence and must be vacated when there is no evidence that defendant did not intend to repay a loan or that the representation made which induced the loan was a lie." *Bakies* at syllabus. The *Bakies* court further stated: "The state had to show that appellant at the time he borrowed the money * * * never intended to pay it back." (Emphasis deleted.) *Id*. at 814. Unlike the present case, *Bakies* dealt specifically with the issue of whether a loan was procured by deception, and not with the issue of performance. As both of these cases are from outside of the Ninth District, neither case was binding authority upon the trial court. *See State v. Williams*, 119 Ohio App.3d 512, 516 (11th Dist.1997). As such, the trial court was within its discretion to refuse to give the instruction.

**{¶23}** Because the trial court did not abuse its discretion in rejecting the proposed jury instructions, Mr. Vertucci's second assignment of error is overruled.

10

ASSIGNMENT OF ERROR THREE

THE TRIAL COURT'S JOURNAL ENTRY ORDERING APPELLANT TO
PAY RESTITUTION IN THE AMOUNT OF $87,617.50 TO [THE VICTIM] IS
CONTRARY TO R.C. 2929.18(A)(1) AND PREVAILING LAW.

{¶24} In his third assignment of error, Mr. Vertucci argues the trial court erred in
determining the amount of the restitution to be paid to the victim. We disagree.

{¶25} R.C. 2929.18(A)(1) permits a sentencing court to impose financial sanctions as
part of an offender's sentence for a felony, and includes:

> Restitution by the offender to the victim of the offender's crime or any survivor of
> the victim, in an amount based on the victim's economic loss. If the court
> imposes restitution, the court shall order that the restitution be made to the victim
> in open court, to the adult probation department that serves the county on behalf
> of the victim, to the clerk of courts, or to another agency designated by the court.
> If the court imposes restitution, at sentencing, the court shall determine the
> amount of restitution to be made by the offender. If the court imposes restitution,
> the court may base the amount of restitution it orders on an amount recommended
> by the victim, the offender, a presentence investigation report, estimates or
> receipts indicating the cost of repairing or replacing property, and other
> information, provided that the amount the court orders as restitution shall not
> exceed the amount of the economic loss suffered by the victim as a direct and
> proximate result of the commission of the offense. If the court decides to impose
> restitution, the court shall hold a hearing on restitution if the offender, victim, or
> survivor disputes the amount. All restitution payments shall be credited against
> any recovery of economic loss in a civil action brought by the victim or any
> survivor of the victim against the offender.

"An award of restitution is limited to the actual loss caused by the defendant's criminal conduct
for which he or she was convicted, and there must be competent credible evidence in the record
from which the court may ascertain the amount of restitution to a reasonable degree of certainty."
*State v. Henderson*, 9th Dist. Summit No. 26682, 2013–Ohio–2798, ¶ 7. This Court reviews the
trial court's award of restitution under an abuse of discretion standard. *State v. Myers*, 9th Dist.
No. 06CA0003, 2006-Ohio-5958, at ¶ 12. An abuse of discretion is more than an error of
judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its

ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, (1983). Under this standard, a trial court abuses its discretion by ordering restitution in an amount which does not bear a reasonable relationship to the actual losses suffered. *State v. Esterle*, 9th Dist. Medina No. 06CA0003-M, 2007-Ohio-1350, ¶ 5.

**{¶26}** At the restitution hearing on April 18, 2016, and as journalized by the entry of April 19, 2016, the trial court granted a judgment for restitution in the amount of $87,617.50. The court reached this value from "the presentence investigation as well as the evidence at trial, because the checks [written by the victims to Mr. Vertucci] were approximately 80,000 plus * * * about $7,000 for material or cash * * *." The parties agreed to incorporate the testimony and evidence as to the checks, which were authenticated at trial, at the restitution hearing. Mr. Vertucci notes that the value of $80,717.50 was calculated from the receipts gathered by the probation department and reported in the presentence investigation, to which was added the amount of $7,000.00 estimated to be the amount charged for building materials.

**{¶27}** In reaching the amount of restitution, the trial court did not utilize the testimony of the State's witness, the chief building official for Summit County, and declined the State's request to include an additional $29,500.00 for repairs and $6,000.00 for materials, as set forth in his testimony, in the amount of restitution. The trial court questioned the relevance of this testimony because it was based on a report as to the condition of the property from January 2016, while Mr. Vertucci last worked at the property in July or early August of 2014. The Court noted it had no information as to what might have happened during that time period.

**{¶28}** Mr. Vertucci now argues that the trial court should have set off the value of the repairs he made to the home and should have deducted the insurance payments made to the victims for damage to their roof and house. Mr. Vertucci provides us with no theory as to why

these insurance payments should be construed as a double recovery, and there is no indication the payments were to cover damages caused by Mr. Vertucci. Furthermore, Mr. Vertucci did not present any evidence at the restitution hearing, and thus he presented no evidence of the value of his work or of the insurance payments. Likewise, he made no argument to the trial court that the payments should be set off from the total amount of restitution.

{¶29} The evidence utilized by the trial court at the restitution hearing consisted of the sum of the expenditures made by the victims to Mr. Vertucci. Because Mr. Vertucci presented no evidence or arguments at the restitution hearing as to any amounts to be set off from that sum, the information before the trial court was limited. Consequently, the amount of restitution awarded by the trial court bears a reasonable relationship to the actual loss suffered. Given the evidence it had before it, the trial court did not abuse its discretion in ordering Mr. Vertucci to pay restitution in the amount of $87,617.50.

{¶30} Mr. Vertucci's third assignment of error is overruled.

III.

{¶31} Mr. Vertucci's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JAMES L. BURDON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.