[Cite as *State v. Bruce*, 2022-Ohio-909.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                      :

      Plaintiff-Appellee,                     :                   No. 21AP-376
                                                         (C.P.C. No. 19CR-5386)

v.                                                  :

Robert J. Bruce, Sr.,                              :                   (REGULAR CALENDAR)

      Defendant-Appellant.                    :

---

D E C I S I O N

Rendered on March 22, 2022

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Mark R. Wilson*, for appellee. **Argued:** *Mark R. Wilson*.

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendant-appellant, Robert J. Bruce, Sr., appeals a judgment entered by the Franklin County Court of Common Pleas convicting him of several counts of gross sexual imposition involving two minors. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On October 18, 2019, a Franklin County Grand Jury indicted appellant on six counts of rape and seven counts of gross sexual imposition involving two children. Specifically, Counts 1, 2, and 3 charged appellant with rape pursuant to R.C. 2907.02 for sexual conduct (fellatio, cunnilingus, and digital-vaginal penetration) with L.S. when she was 8 to 10 years old. Count 4 charged appellant with gross sexual imposition pursuant to R.C. 2907.05 for sexual contact with L.S. when she was less than 13 years old. Counts 5, 6,

and 7 charged appellant with rape pursuant to R.C. 2907.02 for sexual conduct (fellatio, cunnilingus, and digital-vaginal penetration) with M.T. when she was 6 to 8 years old. Finally, Counts 8, 9, 10, 11, 12, and 13 charged appellant with gross sexual imposition pursuant to R.C. 2907.05 for sexual contact with M.T. when she was less than 13 years old.

{¶ 3} Appellant entered a plea of not guilty, and the case proceeded to a jury trial held in May 2021. In presenting its case in chief, plaintiff-appellee, State of Ohio, called four witnesses, M.T., L.S., Nationwide Children's forensic interviewer Alicia Daniels, and Megan Letson, M.D.

{¶ 4} M.T. testified she was born in 2003 and was, at the time of trial, 17 years old and a high school student. According to M.T., from 2009 to 2011, when she was 6 to 8 years old, she lived with her mother and her little sister in appellant's house on Bruckner Road in Franklin County. Appellant's wife, Bev, and two sons, Robert J. Bruce, Jr. and Joey, also lived in the home. Robert Bruce, Jr. was the boyfriend of M.T.'s mother and the biological father of M.T.'s little sister. M.T. had never met her own biological father, and called Robert Bruce, Jr. "[d]ad." (Tr. at 153.) Appellant and his wife were like grandparents to M.T., and she called them "Paw-Paw" and "Mamaw." (Tr. at 153.)

{¶ 5} According to M.T., during the period of time she lived at the Bruckner Road house, appellant began touching her in a sexual way. She testified that the incidents occurred in the living room and laundry room of the home, in the swimming pool behind the home, and at a nearby park. Specific to the living room, M.T. testified that appellant touched her vagina, over her clothes, with his hand and also "kissed by her vagina"—meaning "[j]ust on [her] thighs"—while she on the couch in the living room. (Tr. at 198, 202-03.) M.T. further testified that when she first moved to appellant's house, she slept on an air mattress in the living room. She would wake up and appellant would be next to her in his underwear. If appellant was awake, he would use his hands to touch her vagina and breasts, both over and under her clothes. (Tr. at 172.) Sometimes she would get him to stop and would go to her mamaw's or mom's room. She said the air mattress incidents happened "a lot"—more than five times. (Tr. at 173.)

{¶ 6} M.T. testified that appellant would also force her to touch him when she would retrieve pop stored in the laundry room, which was shielded from view from other areas of the house. M.T. testified that, three to five times, appellant made her touch his

penis with her hand, and that, one time, appellant pulled his pants midway down and "made me suck his dick right there." (Tr. at 167.) When asked more about that encounter, M.T. testified that appellant forcefully put her head "close" to his penis and, "that's it," and that the other times he "was going to make" her perform fellatio in the laundry room, she would run to her mamaw in the living room. (Tr. at 168.)

{¶ 7} As to the incidents in the backyard pool, M.T. testified that appellant, when they had swimsuits on, would "grind [her] butt onto his penis" when his penis was erect and "would grab [her] hand and * * * put it onto his * * * penis area[.]" (Tr. at 157-58.) She said the incidents in the pool would also happen "a lot." (Tr. at 157.)

{¶ 8} According to M.T., at a nearby park, appellant at least three times touched her vagina "through clothes and outside of clothes" when she was in the playground slide. (Tr. at 163.) She additionally claimed that appellant, while on the slide at the park, made her put her hand on his penis at least three times and made her put her mouth on his penis at least twice. (Tr. at 165.) M.T. testified that, sometimes, a friend of hers from the neighborhood, L.S., would be with her at the park too, and that appellant would do sexual things to L.S. and make L.S. do sexual things to him.

{¶ 9} M.T. believed she moved out of appellant's house when she was around 8 or 9 years old but would return to the house briefly for birthday parties and to see her mamaw. M.T. explained that, even though she had to go back to appellant's house, she did not tell anyone about appellant's abusive behavior because he told her that if she did say anything, "he was going to hurt my mom," which resonated with her since her mom was already in an abusive relationship with appellant's son, and "he was going to move his new girlfriend in, which sounds dumb, but to a little kid, my mamaw was the only person like protecting me, even though she didn't know she was." (Tr. at 174) M.T. testified that she only decided much later—in 2018—to tell her guardian about appellant's abuse because her mom was on drugs and her little sister was going to have to move back with her dad, who still lived in appellant's house.

{¶ 10} On cross-examination, M.T. agreed that her guardian was not the first person she told about the abuse. M.T. told a childhood friend, F.K., about the abuse during the time period the abuse occurred and agreed F.K. told her to tell someone else, but she did not do so. M.T. further agreed, in 2016, she told her mother that she was "uncomfortable"

around appellant but insisted she did not tell her specifics about the abuse.  (Tr. at 188.) M.T. further agreed that in November 2016 she told law enforcement officials that she had never seen appellant do anything sexual to anybody.

{¶ 11} M.T. also addressed on cross-examination a March 2019 interview with a forensic interviewer at Nationwide Children's Hospital, which was prompted by the involvement of children's protective services with her household.  M.T. testified that she didn't remember the specifics of that interview but if she denied that appellant made her put her mouth on his body, that would have been a lie because she "was not ready to talk about what had happened to [her] yet."  (Tr. at 191.)  M.T. testified that the first time she told someone about appellant forcing her to perform oral sex was when she talked to the prosecutor, in the past year or two.

{¶ 12} Appellee then called L.S. to testify.  L.S. stated she was born in 2001, making her 20 years old at the time of trial.  She was a high school graduate and employed. According to L.S., she lived on the south side of Columbus within view of Bruckner Road when she was between the ages of 7 and 12 or 13 years old.  L.S.'s mom was best friends with appellant's wife, and L.S. would go to appellant's house nearly every day after school to hang out with M.T. and to swim in their pool.

{¶ 13} According to L.S., appellant would touch her in a sexual way while she was in the pool.  He put his hands on her butt and thighs and his fingers in her vagina.  L.S. additionally testified that appellant touched her in a sexual way on the couch and recliner in the living room of appellant's house.  There, appellant, more than once, would either perform oral sex on her or make her perform oral sex on him and would also put his fingers in her vagina.  Sometimes M.T. would be there, and L.S. saw appellant put his fingers in M.T.'s vagina, but L.S. did not see appellant perform oral sex on M.T.  Appellant would go back and forth between M.T. and L.S. as they were on the couch and recliner.  At the nearby park, L.S. testified that, one time, appellant performed oral sex on her while she was in the tube slide; M.T. was there too.

{¶ 14} L.S. testified that she was about 8 or 9 when this started happening and ended when she was about 11 years old.  According to L.S., appellant told her that if she told anyone about the abuse he would "catch my house on fire with my mom inside" and that she never planned to tell anyone about the abuse because she was scared and not ready to talk about

it. (Tr. at 226, 228.) On cross-examination, L.S. explained that investigators came to find her at her school in Kentucky in 2019 to ask her about appellant.

{¶ 15} Alicia Daniels, a forensic interviewer and mental health advocate at the Center for Family Safety and Healing and Nationwide Children's Hospital, testified that she interviewed M.T. in March 2019. According to Daniels, M.T. disclosed that, in the living room, appellant rubbed her thighs then laid down behind her, pulled down her pants and touched his penis to her butt. M.T. said that, in the laundry room, appellant had his pants pulled down and penis exposed, then followed her to the living room and repeatedly made her touch his penis until someone came home. Daniels testified that M.T. further disclosed that, in the pool, appellant rubbed his penis across her butt, grabbed her hand and made her touch his penis, and that, at the park, appellant made her touch his penis while they were in a slide and that L.S. was there too. According to Daniels, M.T. said L.S. had disclosed appellant did similar things to her. M.T. told Daniels she told another child (F.K.) about the abuse, and also at some point told her mom, but her mom did not believe her. Finally, Daniels testified that it is not uncommon for children to have a difficult time telling everything that happened and that it can be a process of disclosure that can take months or even years.

{¶ 16} On cross-examination, Daniels testified that M.T. disclosed "a lot of touching" but "did not disclose penetration" to her. (Tr. at 274-75.) Daniels testified that M.T. denied that appellant ever put his mouth on her body, denied that she was forced to put her mouth on appellant's penis, and did not mention threats made by appellant. On redirect, Daniels testified that she would not be surprised if a child held back some information and did not disclose the full extent of abuse.

{¶ 17} Megan Letson, M.D., a physician and the program director for the child abuse pediatrics fellowship program at Nationwide Children's Hospital, testified to conducting an examination of M.T. in March 2019. M.T.'s examination revealed a "complete healed hymenal transection" indicative of trauma, but Daniels testified that finding was of limited forensic value since M.T. disclosed a history of consensual sexual activity (not referring to appellant). (Tr. at 308, 312.) Daniels additionally testified that the vast majority of children evaluated for suspected abuse have normal examinations.

{¶ 18} After appellee's exhibits were admitted, appellant moved for acquittal on all counts pursuant to Crim.R. 29(A).   Appellee then moved to dismiss Count 6 of the indictment, a rape charge premised on appellant performing oral sex on M.T., due to the lack of sufficient testimony to meet the standard of beyond a reasonable doubt as to that charge.  The trial court granted appellant's motion as to Count 6 and denied the reminder of the motion.  Both parties rested their cases, and the trial court provided the jury with instructions, including the charge that the jury "may believe or disbelieve all or any part of the testimony of any witness" and that it is the jury's "province to determine what testimony is worthy of belief."  (Tr. at 329-30.)  The instructions also provided, "[t]he charges set forth in each of the counts in the indictment constitute a separate and distinct matter. You must consider each count and the evidence applicable to each count separately.   * * * The defendant may be found guilty or not guilty of any one or all of the offenses."  (Tr. at 335.)  Following closing arguments, the matter was submitted to the jury.

{¶ 19} On May 6, 2021, the jury found appellant guilty of all seven gross sexual imposition counts and not guilty of the remaining five rape counts.  The court ordered a pre-sentence investigation ("PSI") report.

{¶ 20} The sentencing hearing was held on June 29, 2021.  During the hearing, appellee noted "concerning" information in the PSI that could indicate appellant lacked accountability and remorse.  (Tr. at 388.)  Appellee additionally read a statement from M.T. stating the negative effect the abuse had on her and her relationships.  Appellant's counsel emphasized appellant's age (66), the lack of a "significant [criminal] record," and no additional allegations as reasons for the court to consider a moderate sentence.  (Tr. at 390.) Appellant's counsel stated that appellant maintained a position of innocence throughout the trial; when given the chance to speak, appellant stated, "I am sorry for anything that has happened."  (Tr. at 391.)  The trial court then stated,

> I have had an opportunity to review the pre-sentence investigation report and I presided over the trial, I heard the testimony of the witnesses.  My sentence in this case is based upon the overriding principles and purposes of felony sentencing stated in 2929.11, specifically, to protect the public from future crime by you and others, to punish you using the minimum sanctions that I determine will accomplish these purposes without imposing any unnecessary burden on state and local government resources, to ensure that the sentence is

consistent with other similar offenses committed by like offenders, that the sentence is proportionate to the harm you caused and the impact upon the victims, and that your sentence is not based upon any impermissible purpose.

Finally, in determining your sentence I have considered all seriousness and recidivism factors of 2929.12 (B) through (E). More serious, the injury to the victims was worsened by the physical, mental condition or the age of the victim; that the victim suffered serious physical, psychological harm as a result of the offense; that the offender held a position of trust and the offense was related to that position. I do not find any factors that were less serious.

Recidivism more likely, I do find that the offender shows no remorse for the offense. Recidivism unlikely, I do find that he was not adjudicated delinquent prior to the offense.

(Tr. at 391-92.) The trial court imposed 48 months on each count, with Counts 4, 8, 9, and 10 to run consecutive to each other (for 16 years) and Counts 11, 12, and 13 to run concurrently to each other (for 4 years), but consecutive to Counts 4, 8, 9, and 10, for a total of 20 years incarceration.

{¶ 21} Appellant filed a timely appeal.

## II.    ASSIGNMENTS OF ERROR

{¶ 22} Appellant submits two assignments of error for our review:

I.    THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF GROSS SEXUAL IMPOSITION AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II.    THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY SENTENCING HIM IN CONTRAVENTION OF OHIO'S SENTENCING STATUTES.

## III.    ANALYSIS

{¶ 23} Between his two assignments of error, appellant challenges the sufficiency and manifest weight of the evidence to support his convictions for gross sexual imposition and the sentence imposed by the trial court judge. For the following reasons, appellant's assignments of error lack merit.

## A.    First Assignment of Error

{¶ 24} In his first assignment of error, appellant contends his convictions for gross sexual imposition were not supported by sufficient evidence and were also against the weight of the evidence.  "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict." *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Kurtz* at ¶ 15.   In determining whether the evidence is legally sufficient to support a conviction, " '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 25} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80.   "Further, 'the testimony of one witness, if believed by the jury, is enough to support a conviction.' " *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 26} "Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence." *State v. McCombs*, 10th Dist. No. 15AP-245, 2015-Ohio-3848, ¶ 3, citing *Thompkins* at 387.  "While sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38.

{¶ 27} "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and

a new trial ordered." *Patterson* at ¶ 34, citing *Thompkins* at 387. "An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *State v. Jenkins*, 10th Dist. No. 18AP-324, 2018-Ohio-4988, ¶ 21, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 28} In reviewing the credibility of the witnesses, " 'we are guided by the presumption that the jury, * * * "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *Jenkins* at ¶ 22, quoting *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "Accordingly, we afford great deference to the jury's determination of witness credibility." *State v. Albert*, 10th Dist. No. 14AP-30, 2015-Ohio-249, ¶ 14. "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, *discretionary appeal not allowed*, 140 Ohio St. 3d 1455, 2014-Ohio-4414.

{¶ 29} In this case, appellant was tried and convicted of seven counts of gross sexual imposition pursuant to R.C. 2907.05 involving two children less than 13 years of age. The pertinent statutory provisions read, in pertinent part:

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> * * *
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.
>
> * * *
>
> (C) Whoever violates this section is guilty of gross sexual imposition.

R.C. 2907.05(A)(4); (C). As used in R.C. 2907.05, "sexual contact" means "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock,

pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶ 30} In support of his assignment of error, appellant argues "[t]he result in this case defies logic" considering the jury found appellant guilty of gross sexual imposition based on the girls' testimony but not guilty of rape:

> Obviously, the jury found that [M.T.] and [L.S.] were credible only as to the allegations of sexual contact, but not sexual conduct. Nothing in either girls' testimony leads a rational trier of fact to the conclusion that the allegations of sexual contact were more or less believable than the allegations of sexual conduct.

(Appellant's Brief at 2.)

{¶ 31} Initially, although appellant's assignment of error purports to challenge the sufficiency of the evidence to support his convictions, his argument only raises issues of witness credibility. As provided in the legal standard explained above in more detail, the credibility of a witness is irrelevant to assessing the sufficiency of the evidence. *See Kurtz* at ¶ 16. Because appellant has not provided this court with a legally supported argument pertaining to the sufficiency of the evidence, that portion of his assignment of error necessarily fails. *See State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Hubbard*, 10th Dist. No. 11AP-945, 2013-Ohio-2735, ¶ 34 ("An appellant must support their assignments of error with an argument, which includes citation to legal authority"), citing App.R. 16(A)(7) and 12(A)(2); *J.W. v. D.W.*, 10th Dist. No. 19AP-52, 2019-Ohio-4018, ¶ 55 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf.). Moreover, having reviewed each of the gross sexual impositions counts against the record, we find a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found the elements of gross sexual imposition proven beyond a reasonable doubt. In other words, the evidence, if believed, is legally sufficient to support appellant's convictions in this case.

{¶ 32} Appellant's argument concerning the jury's view of witness credibility may be considered in reviewing the manifest weight of the evidence. *See Patterson* at ¶ 34, citing *Thompkins* at 387. Appellant's argument in this regard fails for three reasons.

{¶ 33} First, as this court recently stated in *State v. McCallum*, 10th Dist. No. 19AP-796, 2021-Ohio-2938, ¶ 22:

> " ' Consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others; the conviction generally will be upheld irrespective of its rational incompatibility with the acquittal.' " *State v. Preston-Glenn*, 10th Dist. No. 09AP-92, 2009-Ohio-6771, ¶ 31, quoting *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, ¶ 15, (10th Dist.), citing *State v. Adams*, 53 Ohio St.2d 223, 228, *vacated on separate grounds*, 439 U.S. 811, (1978). *See also State v. Howard*, 10th Dist. No. 06AP-1273, 2007-Ohio-5659, ¶ 6-7 (distinguishing cases concerning inconsistent verdicts to different counts versus inconsistent verdicts arising from the same count). In a multi-count indictment, each count is distinct and independent of all other counts, and therefore inconsistent verdicts among different counts do not justify overturning a verdict of guilt. *Preston-Glenn* at ¶ 31, citing *Trewartha* at ¶ 15 (noting "[t]he sanctity of the jury verdict should be preserved and could not be upset by speculation or inquiry into such matters to resolve the inconsistency"), citing *State v. Lovejoy*, 79 Ohio St.3d 440, 444 (1997).

This case involves a multiple count indictment outlining independent charges of the separate crimes of rape and gross sexual imposition. Therefore, to the extent appellant argues the jury verdicts in this case—acquitting him of rape but convicting him of gross sexual imposition—are inconsistent, the jury verdicts are nevertheless preserved under the reasoning stated in *McCallum*.

{¶ 34} Second, appellant's argument as to evaluation of witness credibility lacks merit under the law. Appellant essentially argues that because the jury found the girls lacked credibility as to the rape counts, the jury necessarily had to find the girls lacked credibility as to the gross sexual imposition counts. However, contrary to appellant's position, "[t]he jury 'may believe or disbelieve any witness or accept part of what a witness says and reject the rest.' " *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, ¶ 37, quoting *State v. Antill*, 176 Ohio St. 61, 67 (1964). We note the jury instructions in this case included this statement of the law, and appellant does not raise any error in that regard.

{¶ 35} Third, the record in this case does provide some basis for the jury to conclude the evidence met the bar to prove the gross sexual imposition counts but did not show, beyond a reasonable doubt, that appellant raped the girls. M.T.'s disclosures to the forensic

interviewer in 2019 about appellant touching her in the living room, in the laundry room, and in the pool largely mirrored her testimony at trial. Conversely, her testimony at trial regarding oral sex changed from the 2019 interview, where she denied appellant ever put his mouth on her body and denied that she was forced to put her mouth on appellant's penis. M.T. also agreed that the first time she told an adult about the oral sex allegations was when she met with the prosecutor just prior to the indictment. Furthermore, L.S.'s description of appellant's touching her in the pool was similar to M.T.'s account, perhaps strengthening the believability of that incident, while L.S.'s assertion of digital penetration of both girls and oral sex in the living room was not supported by M.T.'s testimony. Overall, having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of witnesses, we find the jury did not clearly lose its way and create "such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Patterson* at ¶ 34, citing *Thompkins* at 387.

{¶ 36} Therefore, considering all the above, we find appellant's convictions for gross sexual imposition to be supported by sufficient evidence and to not be against the manifest weight of the evidence.

{¶ 37} Accordingly, appellant's first assignment of error is overruled.

**B.     Second Assignment of Error**

{¶ 38} In his second assignment of error, appellant contends the trial court erred to his prejudice by sentencing him in contravention to R.C. 2929.11(A) and (B) and R.C. 2929.12 and asks this court to remand the matter to the trial court for resentencing. Specifically, appellant argues R.C. 2929.11:

> mandates that trial courts impose the minimum sanctions that do not impose an unnecessary burden on governmental resources or services. Given Appellant's age at sentencing (66), the trial court's 20-year sentence is essentially a life sentence for him. That, along with simply imposing near-maximum sentences on all counts gives no consideration to the dictates of R.C. 2929.11.

(Appellant's Brief at 6-7.)

{¶ 39} Appellant concedes that in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, "the Ohio Supreme Court curtailed an appellate court's ability to review a sentence pursuant to Revised Code section 2953.08(G)." (Appellant's Brief at 5.) Appellant further

states *Jones* "found that an appellate court could not review a trial court's sentence for compliance with R.C[.] 2929.11 and 2929.12." (Appellant's Brief at 6.) Appellant does not attempt to distinguish *Jones*, but rather asks this court to ignore Ohio Supreme Court precedent and reverse his sentence "[d]espite *Jones*." (Appellant's Brief at 7.)

{¶ 40} We cannot do so. "As an intermediate appellate court, we are bound to follow precedent set by the Supreme Court of Ohio and we cannot issue a decision in conflict with a decision of the Supreme Court that has not been reversed or overruled." *State v. Tatom*, 10th Dist. No. 17AP-758, 2018-Ohio-5143, ¶ 24. In this case, the trial court judge expressly considered R.C. 2929.11 and 2929.12. Appellant essentially asserts the trial court did not accurately weigh the evidence in sentencing him according to the factors and considerations addressed in R.C. 2929.11 and 2929.12; he does not otherwise argue his sentence is contrary to law. Under *Jones*, and as acknowledged by appellant, this type of issue is not reviewable on appeal. Because *Jones* is precedent dispositive of the issue raised by appellant in this case, we abide by it and find appellant's argument to the contrary to lack merit.

{¶ 41} Accordingly, appellant's second assignment of error is overruled.

## IV.    CONCLUSION

{¶ 42} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER, P.J. and BEATTY BLUNT, J., concur.

_____