JOURNAL ENTRY AND OPINION
{¶ 1} Defendant appeals[1] his convictions under the plaintiff, City of Brooklyn's disorderly conduct and theft ordinances.
 {¶ 2} On October 18, 2003, defendant was charged with violating Brooklyn City Ordinance 509.03(b)(1),[2] the City's disorderly conduct statute. Defendant was also charged with petty theft[3] in violation of Brooklyn City Ordinance 545.05. Defendant waived his right to a speedy trial.[4]
 {¶ 3} The facts supporting the charges against defendant are as follows. In the early morning hours of October 18th, 2003, defendant and five other people went to the Steak 'n Shake restaurant located in the City of Brooklyn. As the waitress was taking the table's orders, a disturbance began after defendant was told that the restaurant was not serving breakfast. Sherry Margolis, the shift supervisor, was called to the table. Defendant was upset and called Margolis "a fucking dumb bitch," among other obscene remarks. Margolis asked defendant to leave the restaurant. He refused and the police were called.
 {¶ 4} When the police arrived, they told defendant to pay the bill, but he refused claiming he had not eaten anything. Defendant was arrested and charged with petty theft and disorderly conduct based on voluntary intoxication. Defendant proceeded to a jury trial on October 5, 2004. When the court heard oral motions immediately before trial, however, the City amended the disorderly conduct charge against defendant. That amendment charged defendant with a different section of the disorderly conduct ordinance involving the use of abusive language rather than intoxication.
 {¶ 5} The jury returned a guilty verdict on both the disorderly conduct and petty theft charges.[5] Defendant was sentenced to thirty days plus a $250.00 fine on the disorderly conduct conviction along with one hundred and eighty days incarceration[6] and a $950.00 fine.[7]
Defendant also received twelve months of probation and twenty hours of community service. Following his convictions, defendant filed this appeal in which he presents five assignments of error.
I. THE TRIAL COURT VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO SPEEDY TRIAL WHERE THE TRIAL COURT GRANTED THE CITY'S MOTION MADE OUTSIDE THE LIMITS OF THE SPEEDY TRIAL STATUTE TO SUBSTITUTE THE ORIGINAL CHARGE WITH A NEW CHARGE UNDER A DIFFERENT SUBSECTION OF THE BROOKLYN CITY CODE.
 {¶ 6} Defendant argues that the speedy trial waiver he originally executed cannot apply to the City's amended complaint against him. Defendant claims that when the City amended it complaint and charged him with a different offense under the City's disorderly conduct ordinance it erred because he never received proper notice of the new charge until the day of trial.
 {¶ 7} Defendant further argues that because the amendment charged him with an offense different in kind from the original charge, the speedy trial waiver he originally executed cannot apply to the amendment. Accordingly, defendant argues that because the amendment was made more than three hundred days after the City's original complaint against him, his right to a speedy trial was violated and this court must vacate his disorderly conduct conviction.
 {¶ 8} A defendant's right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution. "R.C.2945.71, the speedy trial statute, incorporates the constitutional protections of the right to a speedy trial provided for in the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. * * * A person charged with an offense shall be discharged if not brought to trial within the time required by section 2945.71. R.C. 2945.73(B)." State v. Vilvens, Warren App. No. CA2001-03-023, 2002-Ohio-292, 2002 Ohio App. LEXIS 241, at *4, citing Brecksville v. Cook (1996), 75 Ohio St.3d 53, 55,661 N.E.2d 706.
 {¶ 9} As explained by the Ohio Supreme Court in State v.Adams, (1989), 43 Ohio St.3d 67, even when an accused has executed a speedy trial waiver, that waiver is not absolute. An exception to a speedy trial waiver occurs under the following circumstances:
When an accused waives the right to a speedy trial as to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances that are brought subsequent to the execution of the waiver.
Id., at syllabus, citing R.C. 2945.71 et seq.[8]
 {¶ 10} A criminal complaint may be amended pursuant to Crim. R. 7(D),
 {¶ 11} which provides, in pertinent part, as follows:
The court may at any time before, during, or after a trial amend the * * * complaint * * * in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in thename or identity of the crime charged. * * *. (Emphasis added.)
Niles v. Kostur, (Dec. 14, 1990), Trumbull App. No. 89-T-4318, 1990 Ohio App. LEXIS 5549, at *2. "When a defendant waives the right to a speedy trial to an initial charge, this waiver is not applicable to additional charges arising from the same set of circumstances brought subsequent to the execution of the waiver." State v. Adams, (1989), 43 Ohio St.3d 67,538 N.E.2d 1025, at syllabus. Moreover, a speedy trial waiver must be knowingly and voluntarily made. State v. King (1994),70 Ohio St.3d 158, 160, 637 N.E.2d 903.
 {¶ 12} There is case law implying that the overall purpose of Crim.R. 7 is to provide a defendant with sufficient notice of the essential facts of the offense with which he is charged. Statev. Ewing (1983), 9 Ohio App.3d 285; see also, Crim.R. 7, Staff Notes to 7-1-93 Amendment, Rule 7(A), Use of indictment or information.
 {¶ 13} As noted in Kostur:
Amendments of misdemeanor complaints should be allowed, if thedefendant still has a reasonable opportunity to prepare hisdefense and the amendments simply clarify or comply in a mannerconsistent with the original complaint. (Emphasis added.) Id., citing Cleveland Heights v. Perryman (1983), 8 Ohio App.3d 443,446.
 {¶ 14} Accordingly, "an indictment which does not contain all the essential elements of an offense may be amended if the name or identity of the crime is not changed and the accused has not been prejudiced by the omission of the element." Kostur, citingState v. O'Brien (1987), 30 Ohio St.3d 122, 127.
 {¶ 15} In the case at bar, defendant was originally charged with violating subsection (b)(1) of the City's ordinance, which, in part, defines disorderly conduct as follows:
No person, while voluntarily intoxicated shall do either of the following:
(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance or alarm to persons of ordinary sensibilities, which conduct of the offender, if the offender were not intoxicated, should know is likely to have that effect on the other. (Emphasis added.)
 {¶ 16} Defendant waived his right to a speedy trial only on the original charge against him, that is, a violation of subsection (b)(1).
 {¶ 17} In its amended complaint against defendant, the City still charged him with disorderly conduct but it changed the offense to the one defined in subsection (a)(2) of the ordinance instead of subsection (b)(1). In its jury instruction defining the disorderly conduct offense, the trial court followed subsection (a)(2) of the ordinance:[9]
Before you can find the defendant, Mr. Fouche, guilty, you must find * * * the defendant recklessly caused inconvenience, annoyance or alarm to another by making unreasonable noise or an offensive, coarse utterance, gesture or display or communicating unwarranted and grossly abusive language to any person, which by its very utterance or usage inflicts injury or tends to incite an immediate breach of peace. (Emphasis added.)
 {¶ 18} The court also explained "recklessly":
A person acts recklessly when, with heedless indifference to the consequences he perversely disregards a known risk, that his conduct is likely to cause a certain result. A person is reckless with respect to circumstances when with heedless indifference to the consequences he perversely disregards a known risk that such circumstances are likely to exist.
Tr. 655-656.
 {¶ 19} We conclude that when the City amended its complaint from charging defendant with violating subsection (b)(1) to violating subsection (a)(2), that amendment changed the identity and nature of the offense defendant was originally charged with committing. Even though both sections of the ordinance are fourth degree misdemeanors, the elements needed to prove each of the offenses are different. Unlike subsection (a)(2) of the City's disorderly conduct ordinance, subsection (b)(1) does not include the element of "recklessness" or the element of "by its very utterance or usage inflicts injury or tends to incite an immediate breach of peace." This last portion of subsection (a)(2)'s language is commonly referred to as "fighting words."
 {¶ 20} The phrase "fighting words" was defined by this court in Cleveland v. Wronko, (May 14, 1987), Cuyahoga App. No. 52132, 1987 Ohio App. LEXIS 6764. They are "words that are likely, by their very utterance, to inflict injury or provoke the average person to an immediate breach of the peace." Id., at *15, citing State v. Wylie (1984), 19 Ohio App.3d 180.
 {¶ 21} In the case at bar, we conclude that the differences between subsections (a)(2) and (b)(1) in the City's ordinance are significant and material. The two sections require evidence of entirely different mens rea and damage elements. The identity of the offense described in section (b)(1) is distinct from the offense charged in section (a)(2) of the City's disorderly conduct ordinance. The City's amendment, therefore, changed the identity of the offense charged against defendant. As a new offense, the amendment implicated defendant's speedy trial rights.
 {¶ 22} In support of its request to amend the complaint against defendant, the City argued that defendant knew of the amendment well before trial. The City prosecutor states she made an undated notation on defendant's file and this notation should have given defendant ample notice of her intent to amend the disorderly conduct charge against him. The City further maintains that the amendment would not alter the identity of the original charge because both subsections (a)(2) and (b)(1) charged fourth degree misdemeanors.
 {¶ 23} In response to the City's arguments, defendant demonstrated that the notation on the City's file was never journalized in the court's docket; nor was defendant ever served with an amended complaint notifying him of the change in the disorderly conduct charge.
 {¶ 24} From this part of the record alone, we conclude that the notice requirement of Crim.R. 7 was not met at the time the City amended its charges against defendant. See, State v.McKenna, (Apr. 14, 1997), Licking App. No. 96 CA 00085, 1997 Ohio App. LEXIS 1912, in which the Fifth Appellate District reversed defendant's conviction because the officer had changed the date of the offense but had never served the amendment on the defendant.
 {¶ 25} Under Kostur and O'Brien, there is yet a second question: whether the City's amendment prejudiced defendant. When he objected to the amendment, defendant explained to the trial court that the amendment would materially alter the nature of his defense:
I would submit to the Court that if granted that would be outside of the speedy trial section and we would certainly be objecting to that and urge the Court to dismiss the amendment, which I believe the prosecutor has made on the record or sought to make on the record today.
Secondly, if the Court, in fact, proceeds under the original charge of disorderly conduct-intoxication, I would submit as an officer of the court, we have received absolutely no evidence of any kind of intoxication on behalf of my client. We know of no tests that were done. We know of no observations that were made. And so I submit to you that that would be as a matter of law a case she couldn't pursue.
Tr. 14-15.
 {¶ 26} From this record, we conclude that had the City been denied its amendment request, defendant may have prevailed in making a motion for acquittal, because the City could not prove that he was intoxicated. Instead, on the day of trial, the City was allowed to amend the charges and prosecute an offense with substantially different elements, a change of which he had no notice. Because he would have had no time to prepare a new defense based on a charge that did not require proof of intoxication, we must conclude defendant was prejudiced by the change. These circumstances constitute exactly the type of prejudice Crim.R. 7 was meant to prevent.
 {¶ 27} For the foregoing reasons, defendant's speedy trial waiver can not apply to the City's amended complaint. Without a speedy trial waiver on the amended charge, the City had to bring defendant to trial no later than January 18, 2004. Defendant's trial, however, began on October 5, 2004, well outside speedy trial parameters. Accordingly, defendant's first assignment of error is sustained and his conviction and sentence for disorderly conduct are vacated.
II. THE COURT ERRED AS A MATTER OF LAW IN DENYING DEFENDANT'S MOTION FOR ACQUITTAL UNDER CRIM.R. 29 REGARDING THE CHARGES OF DISORDERLY CONDUCT AND THEFT.
 {¶ 28} Defendant argues his motion for acquittal should have been granted because the state's evidence against him on the disorderly conduct and petty theft charges was insufficient. Because we have already disposed of defendant's disorderly conduct conviction in Assignment of Error I, we do not address that conviction here. The only remaining issue, therefore, is whether the City's evidence was sufficient to convict defendant of petty theft.
 {¶ 29} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction * * *." Crim.R. 29. "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v. McSwain, Cuyahoga App. No. 83394, 2004-Ohio-3292, at ¶ 10, citing State v. Jenks
(1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. "Sufficiency is a test of adequacy." State v. Thompkins, (1997),78 Ohio St.3d 380, 386-387, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 30} In the case at bar, the trial court instructed the jury on petty theft as defined by the City's ordinance, 545.05:[10]
The defendant, Mr. Fouche, is charged with Petty Theft. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 18th day of October in the year 2003, in the City of Brooklyn, Ohio, Cuyahoga County, the defendant, with purpose to deprive the owner of services, knowingly obtained food or exerted control over either the property without the consent of the owner or the person authorized to give consent.
 {¶ 31} The court further defined "services":
That could be food, personal service, drink, professional services, public utilities, things of that sort. Purpose to deprive is an essential element of Petty Theft. In order to find defendant guilty of Petty Theft, you must find that the defendant acted with the purpose to deprive. Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposefully is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself unless he expresses it to others or indicates it by his conduct.
Tr. 657-658.
 {¶ 32} At trial, Margolis testified that, as the waitress assigned to defendant's table approached with the table's orders, Margolis instructed her not to wait on them. Immediately, defendant stood up and took two plates of food off the waitress's tray and began eating. Margolis was asked about the events that followed:
Q: Okay. And when he grabbed the plates did he say anything to you, or did he say anything with regard to what he was doing or why he was doing that?
A: He said, I'm almost positive he said, I'm just going to sit down and eat the food, or something along the line, and that's when he said I could call the fucking police if I wanted to.
* * *
Q: Did you ever give them a bill?
A: Yes. We had the original bill, which had everything on it that they didn't get yet. So we took everything off that they didn't get. We put on all the drinks and salads and sides and the two Frisco Melts and it came to like twenty-three dollars ($23). And they said they wouldn't pay that, so then we knocked it down to —
Q: Do you know specifically who said that they wouldn't pay that? I mean, did you hear the defendant say he wouldn't pay?
A: I did not. Tr. 61-63. Later in her testimony, Margolis stated that "he refused to pay."[11] Tr. 66. Margolis was not certain who had ordered the food she saw defendant eat. She further admitted that she did not know "what he specifically ordered because [she] did not take the order." Tr. 94. No evidence was adduced establishing that defendant ate the food on both plates he had removed from the waitress's tray.
 {¶ 33} Before the police arrived, Margolis left the table area, and the restaurant manager, Matt Martovitz, talked to the group. Martovitz reduced the table's bill from twenty-three dollars to nine dollars.
 {¶ 34} Denise Linville, a customer in the restaurant when the disturbance ensued, testified that others at the table, not just the defendant, were eating food. Tr. 106, 118. Once police arrived, Linville heard them tell defendant to pay. Linville recalls defendant replying: "We didn't get our whole order and I'm not paying for it." Tr. 120. Linville's testimony establishes defendant was being asked to pay for food that he believed they had not eaten.
 {¶ 35} Martovitz was asked what occurred when he arrived at defendant's table.
Q: Did you at any point try to get the table or a person specifically at the table to pay any kind of bill and leave?
A: Not one person individually because, I mean, they're all different. When we ring them up we ring it up by seat number in case people want to split their check and that.
But the [defendant] in the yellow tie there was the one speaking for everybody there at the time, and when we got up to the counter and everything he was the one — he actually, he did reach for his wallet. He was making it sound like he was the guy that would settle everything, pay the bill and, you know, everything was going to be said and done.
* * *
Q: And you attributed the Frisco Melt to the defendant, why? Why did you attribute the Frisco Melt to the defendant?
A: you mean as for him —
Q: To him consuming —
A: — paying?
Q: Yes. He was up at the register?
A: He was the one speaking for the whole party, it seemed like. And also, like I said, he was reaching for his wallet to pay for it and that's when — when it was at twenty-three dollars ($23) he questioned it when he was reaching for his wallet, so I went back into the computer and I just voided out every single drink, but I could not take the Frisco Melts off. I couldn't because —
Q: Why couldn't you take them off?
A: There was nothing wrong with the product. They consumed it. * * * You know, they may have eaten it with him, so, therefore, they should have to pay for that.
Tr. 142-144. Martovitz went on to describe defendant's refusal to pay anything even after the police arrived at the restaurant. Police officers Christopher Baxter and Brad Esper confirmed defendant's repeated refusals to pay any part of the restaurant bill.
 {¶ 36} Even though this court finds defendant's behavior ill-spirited and unacceptable, we cannot conclude that the City met its burden of producing sufficient evidence to support the charge of petty theft.
 {¶ 37} As a matter of law, the City had to establish that at the time defendant took the food off the waitress's tray, he simultaneously intended to not pay for it. See, R.C. 2913.02, 1974 Committee Comments. This court has previously interpreted the statute on theft to require the state to establish, beyond reasonable doubt, defendant's intent to deprive "at the time" the property was taken. In State v. Bakies, (1991),71 Ohio App.3d 810, 595 N.E.2d 449, defendant was charged with grand theft by deception pursuant to R.C. 2913.02. Defendant had borrowed money but failed to repay it. On appeal, this court held that the state failed to present sufficient evidence that "appellant at thetime he borrowed the money * * * never intended to pay it back." (Emphasis in original.) Bakies, at 452. Defendant's theft conviction was vacated.
 {¶ 38} In the case at bar, when Margolis told the waitress not to serve defendant's table, she clearly withdrew the restaurant's consent to allow defendant to consume any food. Nonetheless, defendant reached around Margolis and removed food from the waitress's tray. There is no evidence, however, that when defendant took the food he intended to not pay for it.
 {¶ 39} To the contrary, Martovitz confirms that after defendant removed the food from the waitress' tray and had eaten some of it, he, nonetheless, went to the counter. At the counter, Martovitz and defendant discussed the bill and defendant reached for his wallet, an action indicating an intent to pay. Moreover, the only evidence of his unwillingness to pay is Linville's recounting that defendant challenged the bill because they had not received all they ordered.
 {¶ 40} We further note that when the trial court instructed the jury on the offense of petty theft, it did not explain the "purpose to deprive" element,[12] namely, that when defendant took the food off the waitress's tray he simultaneously intended not to pay for it.
 {¶ 41} There is insufficient evidence showing what the law requires: that when defendant took and then ate the restaurant's food he also had a purpose to deprive the restaurant of its property without paying. From this record, we conclude that defendant's assignment of error has merit because the City did not produce sufficient evidence to establish each element of the City's petty theft ordinance. Accordingly, defendant's second assignment of error is sustained.
 {¶ 42} In accordance with App.R. 12, defendant's Assignments of Error Nos. III, IV, and V[13] are rendered moot by our disposition of his first and second assignments of error.
 {¶ 43} Because a conviction based on legally insufficient evidence constitutes a denial of due process as a matter of law, the Double Jeopardy Clause of the Fourteenth Amendment to the U.S. Constitution mandates that defendant's conviction under the city's petty theft ordinance be vacated forthwith. Tibbs v.Florida, (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220,72 L.Ed.2d 652, 663.
 {¶ 44} For all the foregoing reasons, defendant's convictions and sentences for disorderly conduct and theft are hereby vacated.
Judgment accordingly.
This cause is vacated.
It is, therefore, ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., concurs in judgment only.
 O. Calabrese, Jr., J., dissents with separate dissentingopinion.
[1] On September 16, 2005, this court granted defendant's motion to strike appellee's brief on appeal as untimely. Accordingly, only defendant's appellate brief is part of the record in this appeal.
[2] A fourth degree misdemeanor. The statute, in part, states as follows:
"No person, while voluntarily intoxicated shall do either of the following:
(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance or alarm to persons of ordinary sensibilities, which conduct of the offender, if the offender were not intoxicated, should know is likely to have that effect on the other."
[3] A first degree misdemeanor. Defendant was additionally charged with violating Brooklyn City Ordinance 525.07, obstructing official business.
[4] R.C. 2945.71 provides that a person charged with a first or second degree misdemeanor must be brought to trial within 90 days. Further, for purposes of sentencing, section (D) of the statute specifies how a defendant's speedy trial time is calculated. That part of the statute states as follows:
"(D) A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged, as determined under divisions (A), (B), and (C) of this section."
[5] Defendant was acquitted on the charge of obstructing official business.
[6] The court suspended one hundred and seventy days of this sentence.
[7] $300.00 was suspended.
[8] "When a defendant moves for discharge on the basis that he has not been brought to trial within the time limits set forth in [the speedy trial statutes], and he presents a prima facie case that he is entitled to discharge, the burden of production of evidence shifts to the state. State v. Price (1997),122 Ohio App.3d 65, 68, 701 N.E.2d 41, citing State v. Butcher (1986),27 Ohio St.3d 28, 30-31, 27 Ohio B. 445, 500 N.E.2d 1368. "State v. Madden, Franklin App. No. CA99-07-077, 2005-Ohio-4281, at ¶ 26.
[9] The ordinance reads as follows:
"No person shall recklessly cause inconvenience, annoyance or alarm to another by doing any of the following:
* * *
(2) Making unreasonable noise or offensively coarse utterance, gesture or display or communicating unwarranted and grossly abusive language to any person, which by its very utterance or usage inflicts injury or tends to incite an immediate breach of peace * * *."
[10] The City's petty theft ordinance is substantially the same in language as R.C. 2913.02(A)(1), which states as follows:
(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
(1) Without the consent of the owner or person authorized to give consent;
(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat;
(5) By intimidation.
[11] Immediately preceding this statement, Margolis had been referring to defendant. We assume, therefore, "he" refers to defendant.
[12] As noted in the statute's 1974 comments: "The section expands upon the common law requirement that the taking of property must occur simultaneously with a purpose to deprive the owner of the property."
[13] III. THE COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT DENIED THE ADMISSION OF DEFENDANT'S EXHIBITS A, D, AND E.
IV. THE COURT ERRED IN DENYING DEFENDANT'S MOTION TO DISMISS BECAUSE THE RECORD CLEARLY DEMONSTRATED THAT THE ARREST OF DEFENDANT WAS NOT CONSTITUTIONALLY VALID AS IT OCCURRED WITHOUT PROBABLE CAUSE.
V. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.