[Cite as *State v. Mosley*, 2025-Ohio-5259.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of
Oregon

        Appellee

v.

Deja Mosley

        Appellant

Court of Appeals Nos. L-24-1292
L-25-00013

Trial Court No. 24 CRB 00370

**DECISION AND JUDGMENT**

Decided: November 21, 2025

* * * * *

Lawerence A. Gold, Esq., for appellant.

Melissa Purpura, City of Oregon Prosecutor for appellee.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on a consolidated appeal from Oregon Municipal Court. For the reasons that follow, we affirm.

# I. Assignments of Error

## First Assignment of Error

The trial court erred in denying [Mosley's] Crim.R. 29 motion.

## Second Assignment of Error

The [trial court's] verdict was against the manifest weight of the evidence presented at trial.

## II. Background

{¶ 2} On April 15, 2024, appellant Deja Mosley was charged with one count of cruelty to animals in violation of R.C. 959.13(A)(4), a misdemeanor of the second degree. Mosley pled not guilty and her case proceeded to a bench trial.

### A. Trial

{¶ 3} At trial, the State presented the testimony of Christopher Root, a witness to the incident, as well as the testimony of Officers Noah Childress, Nicholas Emch, and Kayla O'Connor, of the Oregon Police Division. According to his testimony, Root was at the Walmart on Navarre Avenue in Oregon, Ohio when he noticed a dog in a car "scratching at the windows" and "panting real hard." Root stated that the dog appeared in distress. According to Root, it was "real hot out that day," the car was not running, and the windows in the car were rolled up.

{¶ 4} Root called the police and was told not to break a window, that they were handling it, so he went into the store for "about an hour." When he returned to the vehicle the police were there and the dog was still in the vehicle.

2.

{¶ 5} Officers Childress, Emch, and O'Connor were dispatched to the Walmart store. As Officer Childress described it, he "observed a small dog that was leashed to the backseat" that was panting and scratching at the windows. The dog was "trying to move back and forth in the car, but it was restricted just by how the leash was tied." At least one window in the vehicle was cracked, "approximately an inch" and it was hot outside – in the low 80s and sunny. The other officers testified similarly.

{¶ 6} As the owner of the vehicle was not near the vehicle, Officer Childress and Officer O'Connor went into the store to find the owner. Officer Emch remained by the vehicle.

{¶ 7} After a PA announcement was made in the store with no response, Officers Childress and O'Connor reviewed security footage, which established what time the vehicle arrived and when the driver, who was ultimately determined to be Mosley, entered the store. They then made contact with Mosley at the front of the store. Mosley "[d]idn't seem too concerned"; she continued to speak on her phone, and she went and got ice. She did say she thought she had left the car running and was surprised at how long she had been in the store. Childress testified that, according to the time Mosley left the vehicle, as shown on the security video, the dog had been in the vehicle for an hour and a half by the time they met up with Mosley in the store.

{¶ 8} Once Mosley returned to her vehicle, she unlocked the car and took the dog out and it "started chugging a bunch of water that she had on the floorboard." Prior to this, the dog did not have access to the water.

{¶ 9} Mosley left with the dog.

3.

{¶ 10} None of the State's witnesses had ever had contact with the dog prior to this incident, and thus were not aware of his temperament, and they didn't touch the dog or the inside of the vehicle once the car door was opened.

{¶ 11} After the State presented its witnesses, Mosley made a Crim.R. 29 motion, arguing that the State did not meet its burden under R.C. 959.13(A)(4) because (1) that statute is "meant for a situation where you have multiple animals confined to a limited space and that creates a situation where these animals cannot exercise or have access to fresh air," and (2) the term "enclosure" with respect to animals does not refer to a vehicle but to "something more permanent, secure." The motion was denied.

{¶ 12} Mosley then testified on her own behalf. She explained that on the day of the incident she was working for Spark, a grocery delivery service, and as part of her job, she was shopping for a customer in Walmart. While she was shopping, she left her seven-year-old Yorkshire Terrier, Dexter, in her car. He had on an extended seatbelt that allowed him access to the backseat and the floor. Her driver's side window was cracked "maybe like an inch or so" and her sunroof was propped open. Additionally, she left her car running with the air conditioning on. At one point, while she was in the store, she returned to the "vestibule" at the front of the store to check and see if her car was still running and it seemed to be. According to Mosley, "it runs for about 30 minutes before it turns off."

{¶ 13} When Mosley returned to her vehicle, Dexter was excited to see her. Mosley stated that he usually "pants like that" when he is excited and sees people. She denied that

4.

Dexter drank a lot of water, and she testified that he didn't require any follow-up veterinary care or hospitalization.

## B. Sentencing

{¶ 14} Mosley was found guilty and sentenced to 90 days at the Correctional Center of Northwest Ohio with all 90 days suspended and was placed on inactive probation for six months during which time she was to complete 20 hours of community service. She was also ordered to pay a fine and costs.

## C. Appeal

{¶ 15} Mosley filed two separate appeals, which were consolidated under case number L-24-1292.

## III. First Assignment of Error

{¶ 16} In her first assignment of error, Mosley appeals the denial of her Crim.R. 29 motion for acquittal.

{¶ 17} "A Crim.R. 29 motion for acquittal challenges the sufficiency of the evidence." *State v. Ide*, 2024-Ohio-5527, ¶ 31 (6th Dist.), citing *State v. Brinkley*, 2005-Ohio-1507, ¶ 39. "The denial of a Crim.R. 29 motion 'is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *Id.* quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37.

{¶ 18} The sufficiency of the evidence presents a question of law. *State v. Harvey*, 2022-Ohio-4650, ¶ 52 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). When reviewing the sufficiency of the evidence, we view "the evidence in the light most favorable to

5.

the prosecution and asks whether "'any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.'"" *State v. Brown*, 2025-Ohio-2804, ¶ 16, quoting *State v. Dean*, 2015-Ohio-4347, ¶ 150. "The appropriate standard of review for a sufficiency-of-the-evidence challenge is 'whether, if believed, the evidence can sustain the verdict as a matter of law.' When reviewing whether the State met its burden of production, 'an appellate court does not ask whether the evidence should be believed but, rather, whether the evidence, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."'" (Citations omitted.) *Id*. at ¶ 17. A verdict should not be disturbed "unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *State v. Jenks,* 61 Ohio St.3d 259, 273 (1991).

{¶ 19} Mosley was convicted of violating R.C. 959.13(A)(4), which states in relevant part:

> (A) No person shall:
> . . .
>
> (4) Keep animals other than cattle, poultry or fowl, swine, sheep, or goats in an enclosure without wholesome exercise and change of air, nor or [sic.] feed cows on food that produces impure or unwholesome milk; . . .

{¶ 20} While Mosley concedes her vehicle can be an enclosure, she argues the evidence does not support the finding that Dexter was left without "wholesome exercise and change of air."

6.

{¶ 21} As to air, she cites to statements by multiple witnesses that at least one window was partially open, and to her testimony that her sunroof was open and that her vehicle was running with the air conditioning turned on for part of the time.

{¶ 22} With respect to exercise, she argues that although Dexter was attached to a seatbelt, "it did allow a degree of movement in the back seat and on the nearby floor."

{¶ 23} She also notes that Dexter was not seized by the officers and that "there was no evidence of a follow up veterinary visit for any health issues pertaining to Dexter being in the vehicle." In response to testimony that Dexter appeared to be in distress and was panting and scratching, she states that Dexter is a "friendly, excitable and playful bundle of joy."

{¶ 24} The State argues that Mosley did not renew her Crim.R. 29 motion and therefore it was not properly preserved for appeal and is not properly before us. However, the Ohio Supreme Court has stated that "[t]he purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence." *City of Dayton v. Rogers*, 60 Ohio St.2d 162, 163 (1979), *overruled on other grounds*, *State v. Lazzaro*, 1996-Ohio-397. *See, also, State v. Smith*, 2018-Ohio-3983, ¶ 38 (6th Dist.). Therefore, Mosley's assignment of error is properly before us.

{¶ 25} Viewing the evidence in a light most favorable to the State, we find sufficient evidence was presented that Mosley violated R.C. 959.13(A)(4). Testimony was offered that Dexter was tied to the seat in the vehicle for over an hour and a half on a day when the

7.

temperature was above 80 degrees. Although the majority of the testimony was that at least one window was down about an inch (Root testified that all the windows were closed), there was also testimony that Dexter was scratching at the window, panting hard, and appeared to be "in distress." Officer Emch testified that Dexter "appeared to be overheating" and that he did not feel there was sufficient air flow in the vehicle. Based upon this evidence, we find any rational trier of fact could have found the essential elements of R.C. 959.13(A)(4) proven beyond a reasonable doubt. Accordingly, Mosley's first assignment of error is found not well-taken.

## IV. Second Assignment of Error

{¶ 26} In her second assignment of error, Mosley argues that the verdict was against the manifest weight of the evidence.

{¶ 27} A verdict can be supported by sufficient evidence and yet be against the manifest weight of the evidence. *State v. Villolovos*, 2025-Ohio-2844, ¶ 27 (6th Dist.). In determining whether Mosley's conviction was against the manifest weight of the evidence, we must review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and decide whether in resolving any conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Prescott*, 2010-Ohio-6048, ¶ 48 (6th Dist.), citing *Thompkins*, 78 Ohio St.3d. at 387. We do not view the evidence in a light most favorable to the State; rather, we "sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Lewis*, 2022-Ohio-4421, ¶ 22 (6th Dist.), quoting *State v. Robinson*, 2012-Ohio-6068, ¶ 15 (6th Dist.). "Although we consider the credibility of witnesses

8.

under a manifest-weight standard, we must, nonetheless, extend special deference to the fact-finder's credibility determinations, given that it is the finder of fact that has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor." *State v. Brooks*, 2023-Ohio-2978, ¶ 13 (6th Dist.), citing *State v. Fell*, 2012-Ohio-616, ¶ 14 (6th Dist.). A court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Ford*, 2019-Ohio-4539, ¶ 340, quoting *Thompkins* at 387.

{¶ 28} Mosley contends her conviction was against the manifest weight of the evidence and challenges the credibility of the witnesses for the following reasons: the officers did not seize Dexter; there was no evidence Dexter required any veterinary care after the incident; Mosley testified Dexter was an excitable, friendly dog; none of the officers could testify as to how warm the inside of the car or the seats were; and they also did not have any contact with Dexter to determine if he was actually in distress.

{¶ 29} Although there was no testimony as to the temperature of the inside of the vehicle, there was uncontested testimony that the outside temperature was above 80 degrees and sunny and that Dexter was confined to a seat with black covering. There was also testimony that Dexter was panting heavily and appeared in distress. With this testimony, we do not find the verdict to be against the manifest weight of the evidence or that this is the exceptional case in which the evidence weighs heavily against conviction. Accordingly, we find Mosley's second assignment of error not well-taken.

9.

## V.  Conclusion

{¶ 30} The judgment of the Oregon Municipal Court is affirmed.  Pursuant to App.R. 24,

Mosley is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.

_____
JUDGE

Myron C. Duhart, J.

_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.